| | | |
|---|---|---|
| **PARVIN ARJMANDI as** | ) | |
| **Trustee of the LAMH TRUST,** | ) | |
| **individually and on behalf of all others** | ) | |
| **similarly situated** | ) | **CLASS ACTION** |
| | ) | |
| **Plaintiff,** | ) | **JURY DEMAND** |
| | ) | |
| **v.** | ) | **Case No. _____** |
| | ) | |
| **RW SUPPLY AND DESIGN, LLC; and** | ) | |
| **TECKTON CORPORATION** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CLASS ACTION COMPLAINT

The Plaintiff, Parvin Arjmandi, as Trustee of the LAMH Trust, individually and on behalf of all similarly situated individuals, hereby brings this Class Action Complaint against Defendants RW Supply and Design, LLC and Teckton Corporation ("Teckton"). The Plaintiff states as follows to the Court and Jury for the causes of action against Defendants:

## JURISDICTION AND VENUE

1.     Plaintiff Parvin Arjmandi is the Trustee of LAMH Trust. She is an adult citizen and resident of the state of Tennessee where she has her domicile. The beneficiaries of the LAMH Trust are also Tennessee citizens, residents, and domiciles.

2.     Defendant RW Supply and Design is a Missouri limited liability company headquartered at 1054 Chestnut Bend, West Plains, MO 65775. Based on information and belief, both of its members are domiciles of Missouri.

3.     This Court has personal jurisdiction over RW Supply and Design, LLC because it has a continuous and substantial presence in Tennessee. RW Supply and Design, LLC is registered to do business in Tennessee.  It has a retail showroom location within this judicial district at 1100

Fatherland St, Nashville, TN 37206. Additionally, a portion of the conduct at issue and the harm to the Plaintiff occurred in Tennessee.

4.      Defendant Teckton Corporation is a Nevada Corporation, headquartered in Missouri in the same building as RW Supply and Design, at 1054 Chestnut Bend, West Plains, MO 65775.

5.      RW Supply and Design and Teckton are part of a "group of companies"[1] that operate from a shared headquarters under common ownership and control. Clyde Elbrecht is the owner of RW Supply and Design and the President of Teckton. Patricia Elbrecht is the co-owner of RW Supply and Design and the Secretary of Teckton. Stanton Denton is the Treasurer and Managing Director of Teckton and the National Sales and Marketing Representative for RW Supply and Design.

6.      Teckton has purposely availed itself of the privilege of acting within the state of Tennessee because it markets its products in Tennessee through one or more distributors who act as its sales agent, including RW Supply and Design. RW Supply and Design maintains a retail store and showroom at 1100 Fatherland Street, Nashville, Tennessee where it directly sells Teckton's products. Teckton also ships its products directly to customers in Tennessee. This Court has personal jurisdiction over Teckton under the Tennessee long arm statute, Tenn. Code Ann. § 20-2-201, because this action arises from transactions between Teckton and the Plaintiff that took place, at least in part, in Tennessee.

7.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the Parties are completely diverse and the amount in controversy exceeds $75,000.

---

[1] Sam Cobb (Chief Executive of Real Wood Floors), November 28, 2018, New York Times ("Our group of companies comprise the second-largest employer in the poorest county in Missouri," Cobb said.).

8.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action, defined by 28 U.S.C. § 1332(d)(1)(B), with an amount in controversy of greater than $5 million, exclusive of interest and costs, and involves at least one class member who is a citizen of a state different from the Defendant.

9.     The Court has jurisdiction over the state law claims because they involve the same case or controversy under Article III of the United States Constitution.

10.     Venue is proper in the Middle District of Tennessee because Defendants have a business location within this district and the harm to the Plaintiff at issue occurred in this district.

## STATEMENT OF FACTS

### A.  Introduction

11.     RW Supply and Design markets and sells – among other products – pre-finished engineered wood floor products, including Teckton wood floor products for installation in residential homes. RW Supply and Design describes the difference between traditional wood floor installation and pre-finished engineered wood floor products as follows: "[i]nstead of on-site sanding and finishing, manufacturers sand and finish the floors with precision equipment at the factory. After that, the flooring boards cure and then carefully wrap and box them to be delivered to the job site." Defendants hold themselves out as purveyors of extremely high-end wood flooring particularly for multi-million-dollar homes such as the one owned by Plaintiff.  RW Supply and Design claim to supply wood flooring for some of the most exclusive hotels, resorts, and retail stores in the world.

12.     Defendants RW Supply and Design and Teckton have routinely and systemically misrepresented the geographic origin of their pre-finished engineered flooring to customers like the Plaintiff. RW Supply and Design and Teckton hold themselves out as a multi-generational family-owned business, based in small town in Missouri, that produces, makes, and sells high-

3

quality American wood flooring. In reality – and unbeknownst to its customers – RW Supply and Design and Teckten actually import their pre-finished engineered flooring from third-world countries that lack basic quality control standards such as Guatemala, Cambodia, and China; production centers that have long been synonymous with low-quality wood-flooring containing dangerous levels of toxic chemicals.

   **B. Defendants' Misrepresentation of the Geographic Origin of their Engineered Flooring Products.**

   13.   RW Supply and Design markets itself as a "family-owned company based in West Plains, MO" and represents that "all" of its locations are within the United States:



   14.   In its product catalog, RW Supply and Design represents that it designs and manufacturers its own pre-finished engineered flooring:

   We offer flooring designed, manufactured, and installed by a single source - us - providing full transparency to the flooring phase of your project. With transparency comes an assurance that you'll know what's happening at all times, easing some of the headaches of project management.

   15.   Taken together, RW Supply and Design's representations that (1) all of its locations are within the United States and (2) that it manufacturers its own pre-finished engineered flooring necessarily and reasonably implies that its pre-finished engineered flooring is made in the United States.

   16.   RW Supply and Design also expressly represents in its product catalog that "Our products are handmade in West Plains, Missouri, with the same prefinished flooring we sell."

4

17.     RW Supply and Design also represents that its manufacturing process takes place "in the Eastern and Midwest forests of the U.S."

18.      RW Supply and Design also represents:

> Our environmentally conscious manufacturing process <u>begins in the Eastern and Midwest forests of the U.S.</u> <u>There</u>, only the finest quality hardwoods are selected and cut into lumber, which is then properly dried. This drying process ensures stability in the finished product. Once dried, the lumber is re-sawn into veneer that will later be used as the top layer of your finished hardwood floor. Real Wood Floors only uses sawn-cut veneers to produce the look of a real solid floor. This provides the stability and functionality of an engineered floor.

19.     Teckton expressly represents that its pre-finished engineered wood floor products – including the purported White Oak that it sold to the Plaintiff – "comes[] from the Appalachian region of the United States":





20.     But Teckton never discloses that its flooring products are made in and/or imported from countries outside the United States, such as Cambodia, Guatemala, and/or China.

5

21.     RW Supply and Design's salespeople regularly represent and emphasize that their pre-finished engineered wood floor products, including Teckton products, are made in the United States as part of the sales pitch for that product. This is material.  Customers and homeowners, such as Plaintiff, overwhelmingly value American made wood flooring over flooring produced in China, Guatemala, and Cambodia; and those customers pay significantly more for flooring produced in the United States.

22.     RW Supply and Design historically manufactured its own pre-finished engineered flooring in the United States until the early 2000s.  In an effort to maximize its profits, it began importing pre-finished engineered flooring made in China by Zhejiang Layo Wood Industry Co., Ltd. at a lower cost.

23.     Part of the reason it is cheaper to produce pre-finished engineered flooring in China, is due to the absence of U.S. health and safety regulations meant to protect consumers and the environment.

24.     In 2015, an investigation revealed that Chinese-produced engineered flooring contained toxic levels of formaldehyde, a known cancer-causing chemical. In that investigation, some of the samples of Chinese-made engineering flooring contained formaldehyde levels that were close to 20 times above the level that's allowed to be sold. Long term exposure to that level of formaldehyde could increase the risk of chronic respiratory irritation, change in a person's lung function, increased risk of asthma, as well as several types of cancers. Children exposed to the flooring would be particularly at risk.[2] [3] [4]

---

[2] *See* https://globalnews.ca/news/1594273/high-levels-of-formaldehyde-found-in-chinese-made-floors-sold-in-north-america/
[3] *See* https://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-safety-violations/
[4] *See also* Xioajiang Tang, et al, "Formaldehyde in China: Production, consumption, exposure levels, and health effects," Environmental International 35 (2009) 1210-1224.

25.     In response to the controversy, China began working on regulating formaldehyde. On April 22, 2017, China announced a new regulation that placed limits on formaldehyde emissions for wood-based panels and finishing products, including engineered flooring.

26.     Also in 2017, RW Supply and Design began to transition from to importing pre-finished engineered flooring from China to importing engineered flooring from a Cambodian company called Rong Gean Wood Products Co. Ltd. at even lower costs; and thereby avoiding Chinese regulation limiting toxicity of residential end-use wood-flooring products.

27.     Neither RW Supply and Design nor Teckton disclose – anywhere on their websites, product catalogs, or other sales materials – that their pre-finished engineered wood floor products are made in and/or imported from Cambodia or elsewhere outside the United Sates. Defendants do not do this because they know it would substantially decrease or eliminate customer's interest in purchasing their products.

28.     To the contrary, RW Supply and Design and Teckton's representations about the geographic origin of their engineered flooring products mislead a reasonable consumer into falsely believing that their engineered flooring products were and are made in the United States.

29.     The geographic origin of engineered flooring was incredibly important to the Plaintiff and other class members because engineered flooring that is manufactured outside the United States, particularly in countries with weak safety and health regulations like Cambodia, is undesirable both from a structural quality standpoint and a toxicity standpoint.

### C.  Plaintiff's Purchase of White Oak Engineered Flooring from Defendant.

30.     On July 7, 2023, Plaintiff purchased 4,211 square feet of Teckton 7 inch wide,  9/16 inch thick White Oak Prime Grade Pre-engineered flooring ("Purported White Oak Floor") from RW Supply and Design.

31.     Prior to Plaintiff's purchase, beneficiaries of the LAMH Trust personally visited the RW Supply and Design showroom in Nashville, Tennessee to view the flooring. During that showroom visit, RW Supply and Design's sales representatives repeatedly assured them that the Purported White Oak Floor was 100 percent American constructed, American white oak flooring.

32.     Beneficiaries of the LAMH Trust also reviewed RW Supply and Design and Teckton's promotional materials, which touted that they are American manufacturers of American white oak flooring. Teckton's sales catalog specifically represented that that the Purported White Oak Floor "comes from the Appalachian region of the United States" and was made by an American company.

33.     RW Supply and Design's sales representatives also act as sales agents for Teckton.

34.     Neither RW Supply and Design nor Teckton ever disclosed to Plaintiff or the beneficiaries of the LAMH Trust that the Purported White Oak Floor had been made by Rong Gean Wood Products Co. Ltd. in Cambodia or by a third-party in Guatemala.

35.     If RW Supply and Design or Teckton had done so, Plaintiff never would have purchased the Purported White Oak Floor.

36.     White oak is more desirable and is more expensive than red oak for several reasons. First, many consumers prefer the aesthetic of white oak to red oak. White oak has a lighter, yellow-brown color and red oak is more reddish-brown. White oak also has a straighter, more uniform grain pattern and a smoother texture than red oak. As such, white oak has a more formal appearance and red oak has a more rustic or casual look. Second, white oak is a dense, heavy wood that is harder than red oak. This makes it more durable and resistant to rot as compared to red oak.

37.     Defendants know that the color of an oak floor is material. RW Supply and Design acknowledges in its sales materials: "The most important aspect [of a wood floor]: the color. If you dislike the color with your home and style, nothing else really matters."

38.     In late October 2023, Defendants delivered the Purported White Oak Floor to the Plaintiff. The product was labeled as "white oak."

39.     Based on Defendants' representations, Plaintiff arranged for the Purported White Oak Floor to be professionally installed in a residential home.

40.     Once the Purported White Oak Floor was installed, beneficiaries of the LAMH Trust began to suspect that the Purported White Oak Floor was not white oak – as Defendants had represented – because the Purported White Oak Floor had a distinctive pink hue that is uncharacteristic for white oak.

41.     One of the beneficiaries of the LAMH Trust then began to investigate further and, through significant efforts involving obtaining and reviewing Bills of Lading from United States Customs, learned that RW Supply and Design and Teckton import virtually all of the engineered flooring products they sell from Southeast Asia or South America.

42.     One of the beneficiaries of the LAMH Trust then compared the batch number on the engineered wood flooring (10-28-2022) that had been delivered with all U.S. Customs information for the Defendants from 2019 forward.

43.     U.S. Customs records show that RW Supply and Design and Teckton imported the Purported White Oak Floor that they ultimately sold to the Plaintiff from Rong Gean Wood Products Co. Ltd. on October 28, 2022. The bill of lading for that shipment described the cargo as "Red Oak Engineered Wood Flooring."[5]

---

[5] This is in contrast to other bills of lading describing for RW Supply and Design and Teckton from their Cambodian supplier noting the presence of "White Oak Engineered Wood Flooring."

9

44.     On or around October 27, 2023, one of the beneficiaries of the LAMH Trust contacted the Defendants to attempt to confirm that they had received Red Oak flooring from Cambodia and/or Guatamala.

45.     There are two methods to determine whether a flooring product is white oak. As RW Supply and Design acknowledges: "You can determine the difference between the [white oak and red oak] with a chemical test (which we sell at all of our stores) or by visually inspecting the ends of boards."

46.     In order to visually determine whether wood is white oak or red oak, RW Supply and Design instructs as follows: "When looking at the end grain of a cut piece of plain sawn red oak, you'll notice that the pores look wide and open. The pores on a piece of white oak will look filled in and will sparkle in bright light."

47.     A visual inspection of the Purported White Oak Floor confirmed it was not white oak.

48.     A chemical test is the most reliable and scientific way to confirm whether wood is white oak.  RW Supply and Design explains this test as follows:

> The most reliable test is a white oak test kit. From a clean unfinished oak board simply shave off flakes of wood into the plastic tray. Wet the shavings with a few drops of part A solution, wait for a minute then add a few drops of part B solution. If the shavings change color to greenish or black, the test is positive for white oak. If the color does not noticeably change it is not white oak.

49.     On October 30, 2023, the Defendants sent a person they had identified as an expert – Jared Fitzgerald – to test the Purported White Oak Floor at issue. Mr. Fitzgerald conducted a chemical test of multiple boards of the Purported White Oak Floor, which confirmed the flooring was not white oak. Mr. Fitzgerald then became belligerent and physically threatening.

50. One of the beneficiaries of the LAMH Trust then purchased two Woodwise White Oak Test Kits from Jeffco Flooring in Nashville and conducted another test of the Purported White Oak Flooring himself. The samples did not turn blackish green but became a somewhat darker brown / dirty tan, indicating that the wood was not white oak.

51. On November 1, 2023, one of the beneficiaries of the LAMH Trust contacted Stan Dennison and Richard Moore (corporate counsel for Defendants) to ask that Defendants identify, in writing, where the Purported White Oak Flooring had been manufactured, whether it had been imported from Asia, and the species of wood of the top layer of the engineered flooring.

52. The Defendants repeatedly refused to do so, even though the beneficiary repeatedly followed up and demanded answers. Plaintiff, through its beneficiaries, communicated directly with executives and lawyers for both Teckton and RW Supply and Design on dozens of occasions throughout October and November of 2023 seeking basic information about the flooring Plaintiff was provided, including where it was manufactured.

53. Defendants steadfastly and pointedly refused to disclose where the flooring was manufactured, or its actual origin, and, indeed, refused to provide *any* information whatsoever about the flooring.

54. Based on information and belief, the Defendants refused to provide this information because they did not want to admit that the Purported White Oak Flooring was a red oak product imported from Cambodia.

55. As a result of Defendants' misrepresentation of the Purported White Oak Floor, the Plaintiff had to pay for the Purported White Oak Floor to be removed, for a replacement White Oak floor, and for installation of an actual White Oak floor. Plaintiff incurred substantial financial damages in doing so, and moreover, as a result of that process, the beneficiaries of the LAMH

Trust were unable to live in their house, and the Plaintiff had to pay for temporary replacement housing for a period of months.

<strong><u>CLASS ACTION ALLEGATIONS</u></strong>

56.     Plaintiff brings this action individually and on behalf of all similarly situated individuals pursuant to Fed. R. Civ. P. 23(2), 23(b)(2) and 23(b)(3).

57.     Plaintiff seeks to represent a nationwide class with respect to the claims against RW Supply and Design defined as follows:

> All individuals who purchased engineered wood floor products from RW Supply and Design, LLC during the applicable limitations period up to and including final judgment in this action.

58.     Plaintiff also seeks to represent a sub-class with respect to the claims against RW Supply and Design defined as follows:

> All individuals who purchased engineered wood floor products from RW Supply and Design, LLC in Tennessee and/or to be delivered to Tennessee, during the applicable limitations period up to and including final judgment in this action.

59.     Plaintiff seeks to represent a nationwide class with respect to the claims against Teckton defined as follows:

> All individuals who purchased Teckton engineered wood floor products during the applicable limitations period up to and including final judgment in this action.

60.     Plaintiff also seeks to represent a sub-class with respect to the claims against Teckton defined as follows:

> All individuals who purchased Teckton engineered wood floor products in Tennessee and/or to be delivered to Tennessee, during the applicable limitations period up to and including final judgment in this action.

61.      Excluded from each of the foregoing class definitions are current and former officers and directors of Defendants, members of the immediate families of the officers and directors of

Defendants, Defendants' legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and any members of the judiciary assigned to preside over this matter.

62.     Plaintiff reserves the right to revise the Class definitions based on facts learned in the course of litigating this matter.

63.     Upon information and belief, members of each of the proposed classes and sub-classes are so numerous that joinder of all members is impracticable. Although the exact number of members of the classes and subclasses is currently unknown to Plaintiff, the members can be easily identified through Defendants' records.

64.     Plaintiff's claims (Counts I-IV) are typical of the claims of the members of the nationwide classes and Tennessee sub-classes that Plaintiff seeks to represent, because the factual and legal bases of Defendants' liability to Plaintiff and the other class members are the same or substantially the same, and because Defendants' conduct has resulted in similar injuries to Plaintiff and other class members. As alleged herein, Plaintiff and the class have all suffered damages due to Defendants' misrepresentation of the geographic origin of its engineered wood floor products.

65.     There are many questions of law and fact common to the claims of the Plaintiff and the class, and those questions predominate over any questions that may affect individual members. Common questions for the class include, for example: whether Defendants misrepresented the geographic origin of engineered wood floor products and/or deceptively failed to disclose that its engineered wood floor products are produced in Cambodia, or elsewhere, after misleadingly representing or implying those products are produced in the United States, whether Defendants intended to mislead its customers with various statements about the U.S. origins of its engineered wood floor products and non-disclosure of the facts that those products were imported

13

from Cambodia, and whether engineered wood floor products produced in Cambodia are worth less than engineered wood floor products produced in the United States.

66.     Absent a class action, many members of the classes may never even learn that Defendants misled them about the geographic origin of the engineered wood floor products they purchased from Defendants, and most class members would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions in that it conserves the resources of the courts and the litigants and promotes consistency of adjudication.

67.     Plaintiff will adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer claims, as well as complex litigation and class actions.[6] Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor Plaintiff's counsel has any interest adverse to those of the other members of the Class.

## CAUSES OF ACTION

### Count I – Missouri Merchandising Practices Act
### (Nationwide Classes)

68.     The material allegations set forth above are incorporated by reference as if fully set forth herein.

69.     The Missouri Merchandising Practices Act ("MMPA") prohibits the use of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or

---

[6] *See e.g., Ladd, et al. v. Nashville Booting*, No. 3:20-cv-00626, Dkt. 80 (M.D. Tenn. May 11, 2023) (granting plaintiffs' motion for class certification and appointing undersigned counsel); *Palmer, et al. v. Cognizant*, No. 17-6848-DMG (PLAx), Dkt. 384 (C.D. Cal. Oct. 27, 2022) (same).

advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri . . . ." Mo. Rev. Stat. § 407.020.1.

70.     In connection with the sale of engineered wood flooring products to the Plaintiff and other members of the nationwide class, the Defendants deceptively and misleadingly represented that their engineered wood flooring products were made in the United States.

71.     In connection with the sale of engineered wood flooring products to the Plaintiff and other members of the nationwide class, the Defendants deceptively and misleadingly implied that their engineering wood flooring products were made in the United States with half-truths, such that they had an obligation to disclose that they imported their engineered wood flooring products from Cambodia or elsewhere. However, Defendants deceptively and fraudulently failed to disclose to the Plaintiff and other members of the nationwide class that they imported their engineered wood flooring products from Cambodia.

72.     The Defendants' misrepresentation, and failure to disclose, the true geographic origin of their engineered wood flooring products would mislead a reasonable consumer to believe that their engineered wood flooring products were made in America, when those products were imported from Cambodia or elsewhere.

73.     The Defendants' misrepresentations about – and failure to disclose – the true geographic origin of its engineered wood flooring products were material because it substantially affects the value of, and their customers' willingness to purchase, those products.

74.     The Plaintiff purchased the Purported White Oak Floor from the Defendants primarily for personal, family or household purposes.

75.     The Defendants know that customers would be significantly less likely to purchase engineered wood flooring products made in Cambodia or elsewhere outside the U.S., particularly

after previous investigations and scandals revealed that engineered wood flooring products made in countries with substantially fewer or no health and safety regulations can pose a risk to human health. It is for this reason that the Defendants do not disclose that they import their engineered wood flooring products from Cambodia, Guatemala, and/or China.

76.     The reference to "in or from the state of Missouri" in the MMPA means that "the trade or commerce [must] originate or occur 'in or from the state of Missouri.'" *State ex rel. Nixon v. Estes*, 108 S.W.3d 795, 800 (Mo. Ct. App. 2003). Thus, the MMPA applies when a defendant's conduct at issue has a sufficient nexus to Missouri even though the consumers/plaintiffs in question were from other states. *Id.*

77.     Here, the Defendant imported the engineered wood flooring products that it sold the Plaintiff and other class-members from Cambodia or elsewhere to their headquarters in West Plains, Missouri.

78.     Defendants designed and published their marketing materials that misrepresent the geographic origin of its engineered floor products in Missouri.

79.     After the Plaintiff and other members of the class purchased engineered floor products from Defendant, Defendant then shipped those products from Missouri to the Plaintiff and other members of the class.

80.     The Plaintiff and other members of the nationwide Class would not have purchased engineered wood flooring products from the Defendant, at least for the price they paid, if the Defendant disclosed that those products were imported from Cambodia, Guatemala, China, or elsewhere outside the United States.

16

81.    As a result of the Defendants' misrepresentations and failure to disclose the true geographic origin of its engineered wood flooring products, the Plaintiff and other class members suffered an ascertainable economic loss.

82.    Plaintiff requests that this Court certify the nationwide classes as to Count I and award the Plaintiff and class compensatory damages, in an amount to be established at trial, punitive damages and attorneys' fees. Mo. Rev. Stat. § 407.025(2).

83.    Plaintiff requests that this Court enjoin the Defendant from representing that its engineered wood flooring products are made in, or come from, the United States, without disclosing that those products are imported from Cambodia or elsewhere. Mo. Rev. Stat. § 407.025(2)(3).

## Count II – Breach of Warranty
## (Nationwide Classes)

84.    The material allegations set forth above are incorporated by reference as if fully set forth herein.

85.    The Defendants made statements expressly indicating and/or reasonably implying that the engineered wood flooring products that they sold to the Plaintiff and other class members were made in the United States by an American company. Defendants' description of the goods as American-made became part of the basis of the bargain and created an express warranty.

86.    By delivering non-conforming engineered wood flooring products imported from Cambodia or elsewhere to the Plaintiff and other members of the class, Defendants breached this warranty.

87.    As a result of Defendants' breach of warranty, Plaintiff and other members of the class suffered damages.

17

88.     Plaintiff requests that this Court certify the nationwide classes as to Count II and award the Plaintiff and class compensatory damages, in an amount to be established at trial.

## Count III – Fraud
### (Nationwide Classes)

89.     The material allegations set forth above are incorporated by reference as if fully set forth herein.

90.     In connection with the sale of engineered wood flooring products to the Plaintiff and other members of the nationwide class, the Defendants falsely and misleadingly represented that their engineered wood flooring products were made in the United States.

91.     In connection with the sale of engineered wood flooring products to the Plaintiff and other members of the nationwide class, the Defendants deceptively and misleadingly implied that their engineered wood flooring products were made in the United States with half-truths, such that they had an obligation to disclose that they imported their engineering wood flooring products from Cambodia or elsewhere. However, Defendants deceptively and fraudulently failed to disclose to the Plaintiff and other members of the nationwide class that they imported their engineered wood flooring products from Cambodia or elsewhere.

92.     The Defendants' misrepresentation, and failure to disclose, the true geographic origin of their engineered wood flooring products would mislead a reasonable consumer to believe that their engineered wood flooring products were made in America, when those products were imported from Cambodia.

93.     The Defendants' misrepresentations about – and failure to disclose – the true geographic origin of its engineered wood flooring products were material because it substantially affects the value of, and their customers' willingness to purchase, those products.

94. The Defendants knew their representations were false, or at least misleadingly incomplete, and the Defendants intended for the Plaintiff and other class members to believe that their products were made in the United States, and to rely on those representations.

95. The Plaintiff and other class members relied on the truth of Defendants' representations when buying engineered wood flooring products from Defendants.

96. The Plaintiff and other class members suffered damages as a result of their reliance upon Defendants' representations.

97. Defendants' conduct was intentional and reckless and meets the standard for punitive damages.

98. Plaintiff requests that this Court certify the nationwide classes as to Count III and award the Plaintiff and class compensatory damages, in an amount to be established at trial and punitive damages.

**Count IV – Tennessee Consumer Protection Act**
**(Tennessee Sub-Classes Only)**

99. The material allegations set forth above are incorporated by reference as if fully set forth herein.

100. The Tennessee Consumer Protection Act (TCPA), Tenn. Code Ann. § 47-18-109(a)(1), provides a private right of action to any "person" who suffers an ascertainable loss due to an "unfair or deceptive act" of another, as delineated in Tenn. Code Ann. 47-18-104(b).

101. The following are all considered "unfair or deceptive acts" under the TCPA:

> ➢ "Using deceptive representations or designations of geographic origin in connection with goods or services."

> ➢ "Causing likelihood of confusion or of misunderstanding as to the source, . . .of goods or services."

➢ "Falsely passing off goods or services as those of another"[7]

102.    The Defendants engaged in unfair or deceptive acts in violation of the TCPA by making deceptive representations about the geographic origin of their engineered wood flooring products.

103.    The Defendants engaged in unfair or deceptive acts in violation of the TCPA by intentionally creating confusing or misunderstanding about the source of their engineered wood flooring products by implying those products are made in the United States by an American company, and not disclosing that they are imported from Cambodia and/or China.

104.    The Defendants engaged in unfair or deceptive acts in violation of the TCPA by falsely passing off goods produced by Rong Gean Wood Products Co. Ltd. in Cambodia, and/or by another Asian or South American company, as their own.

105.    Defendants unfair and deceptive acts have caused the Plaintiff and other class members to suffer ascertainable economic damages recoverable pursuant to Tenn. Code Ann. § 47-18-109(a)(1).

106.    The Plaintiff and other class members are also entitled to recover treble damages pursuant to Tenn. Code Ann. § 47-18-109(a)(4).

107.    The Plaintiff and other class members are also entitled to recover attorneys' fees pursuant to Tenn. Code Ann. § 47-18-109(c)(1).

108.    Pursuant to Tenn. Code Ann. § 47-18-112, any damages, costs and fees recovered pursuant to the TCPA "shall be cumulative and supplementary to all other  powers and remedies otherwise provided by law."

---

[7] Tenn. Code Ann. § 47-18-104(b)(1),(2),(4).

20

**Count V – Breach of Warranty**
**(Plaintiff/Individual)**

109.    The material allegations set forth above are incorporated by reference as if fully set forth herein.

110.    The Defendants expressly stated that the Purported White Oak Flooring they sold to the Plaintiff was "white oak." This became part of the basis of the bargain and created an express warranty.

111.    By delivering non-conforming engineered wood flooring that was not white oak, Defendants breached this warranty.

112.    As a result of Defendants' breach of warranty, Plaintiff suffered damages.

113.    Plaintiff requests that this Court award the Plaintiff compensatory damages, in an amount to be established at trial.

**Count VI – Tennessee Consumer Protection Act**
**(Plaintiff/Individual)**

114.    The material allegations set forth herein are incorporated by reference as if fully set forth herein.

115.    The Tennessee Consumer Protection Act (TCPA), Tenn. Code Ann. § 47-18-109(a)(1), provides a private right of action to any "person" who suffers an ascertainable loss due to an "unfair or deceptive act" of another, as delineated in Tenn. Code Ann. 47-18-104(b).

116.    The following are all considered "unfair or deceptive acts" under the TCPA:

> ➢ "Representing that goods . . .have . . .characteristics, ingredients, . . . or quantities that they do not have. . ."

21

➢ "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another."[8]

117.    The Defendants engaged in unfair or deceptive acts in violation of the TCPA by representing that the Purported White Oak Flooring they sold to the Plaintiff was made of "white oak" when it was not.

118.    Defendant's unfair and deceptive acts have caused the Plaintiff to suffer ascertainable economic damages recoverable pursuant to Tenn. Code Ann. § 47-18-109(a)(1).

119.    The Plaintiff is also entitled to recover treble damages and attorneys' fees pursuant to Tenn. Code Ann. § 47-18-109(a)(4), (c)(1).

120.    Plaintiff requests that this Court enter judgment in favor of the Plaintiff awarding compensatory and trebled damages, along with attorneys' fees and costs.

121.    Pursuant to Tenn. Code Ann. § 47-18-112, any damages, costs and fees recovered pursuant to the TCPA "shall be cumulative and supplementary to all other powers and remedies otherwise provided by law."

### Count VII – Fraud
### (Plaintiff/Individual)

122.    The material allegations set forth herein are incorporated by reference as if fully set forth herein.

123.    Defendants falsely represented that the Purported White Oak Flooring was "white oak," when it was not.

124.    The Defendants knew, or recklessly ignored, that the Purported White Flooring was not "white oak," including because they certified it was "red oak" when it was imported from Cambodia through U.S. Customs.

---

[8] Tenn. Code Ann. § 47-18-104(b)(5),(7).

125.    The Defendants intended for the Plaintiff to rely on their representations that the Purported White Oak Flooring was "white oak."

126.    The Plaintiff reasonably relied on the Defendants' representations that the Purported White Oak Flooring was "white oak."

127.    As a result of her reasonable reliance on Defendants' false representations, the Plaintiff and its beneficiaries were damaged.

128.    Defendants' conduct was intentional and reckless and meets the standard for punitive damages.

129.    Plaintiff requests that this Court enter judgment in favor of the Plaintiff awarding compensatory and punitive damages.

## JURY DEMAND

130.    Pursuant to Federal Rule of Civil Procedure 38(a), Plaintiff, individually and on behalf of all other similarly situated, hereby demands a trial by jury on all issues so triable.


**Respectfully submitted,**

**s/Mark Hammervold**
Mark Hammervold, TN #31147
Hammervold Law
155 S. Lawndale Ave.
Elmhurst, IL 60126
405.509.0372
mark@hammervoldlaw.com

*Attorney for the Plaintiff and Putative Class*