IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| PARVIN ARJMANDI as Trustee of the LAMH TRUST, individually and on behalf Of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> RW SUPPLY AND DESIGN, LLC; and TECKTON CORPORATION, <br><br> Defendant. | CLASS ACTION <br><br> Case No. 3-24-cv-00704 <br> JURY DEMAND |

## ANSWER AMENDED COMPLAINT

Come now Defendants, RW Supply and Design, LLC ("RW Supply") and Teckton Corporation ("Teckton")(collectively as "Defendants"), by and through counsel, and for answer to the Amended Class Action Complaint filed against them by Parvin Arjmandi as Trustee of the LAMH Trust, individually and on behalf of all others similarly situated ("Plaintiff"), would state as follows:

1. Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph one.

2. Admitted.

3. Defendants deny Plaintiff suffered any harm in Tennessee or elsewhere. Defendants deny there is a showroom ay 1100 Fatherland. Defendants admit the remaining averments in paragraph three.

4. Admitted.

5. Defendants deny common control. Defendants deny Ellbrecht is the only owner. Defendants deny Denton is the National Sales and Marketing Representative for RW Supply. Defendants admit the remaining averments in paragraph five.

6. Defendants deny there is still a showroom at 1100 Fatherland. Defendants admit the remaining averments in paragraph six.

7. Defendants deny the amount in controversy exceeds $75,000. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph seven.

8. Denied.

9. Denied.

10. Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph ten.

11. Defendants admit RW Supply's website describes the difference between unfinished wood flooring and pre-finished engineered wood floor products. Defendants admit they provide high-quality wood flooring. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph eleven.

12. Defendants admit they are primarily family-owned, based in Missouri, and focused on delivering a variety of wood flooring products to their customers. Defendants deny the remaining averments in paragraph twelve.

13. Defendants admit RW Supply is a family-owned company located in West Plains, MO. Defendants admit the screenshot contained in paragraph thirteen is the footer

on the company's website listing their brick and mortar locations. Defendants deny the remaining averments in paragraph thirteen.

14. Defendants cannot respond to the averment in paragraph fourteen because the statement is incomplete and/or unintelligible.

15 Defendants admit RW Supply's commercial division contains the quote in paragraph fourteen, which is completely irrelevant given the product ordered, purchased and delivered to BID was Unfinished White Oak. Defendants deny the remaining averments in paragraph fifteen.

16. Denied.

17. Defendants deny any representation to Plaintiff that the Unfinished White Oak ordered by, paid for, and delivered to BID was handmade in Missouri. Defendants admit the statement in paragraph seventeen is contained in RW Supply's product for an unrelated product.

18. Defendants admit the website for RW Supply contains as statement that "[o]ur environmentally conscious manufacturing process begins in the Eastern and Midwest forests of the U.S." Defendants deny the remaining averments in paragraph seventeen.

19. Defendants admit the website for RW Supply contains the statement in paragraph eighteen. Defendants deny this general statement was intended to reflect all products offered by RW Supply.

20. Defendants admit the wood used for the top layer of the engineered product ordered, purchased and delivered to BID was Unfinished White Oak from the Eastern and

Midwest Forests of the United States. Defendants deny the remaining averments given the product ordered, purchased and delivered to BID was Unfinished White Oak.

21. Denied.

22 Denied.

23. Denied.

24. Denied.

25. Defendants are generally aware of an investigation that occurred after Lumber Liquidators was found selling certain flooring labeled "CARB II" despite not meeting the standards for formaldehyde emissions. The investigation resulted in the enactment of legislation referred to as TSCA Title VI. The Unfinished White Oak ordered, purchased and delivered to BID was TSCA Title VI compliant and was audited by a third party, SCS Global Services. Defendants deny the remaining allegations of paragraph twenty-five.

26. Defendants are generally aware of an investigation that occurred after Lumber Liquidators was found selling certain flooring labeled "CARB II" despite not meeting the standards for formaldehyde emissions. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph twenty-six.

27. Denied.

28. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Defendants admit BID purchased 4,211 SF Unfinished White Oak from RW Supply. Defendants deny the remaining averments in paragraph thirty-one.

32. Defendants deny any misrepresentation to BID or Brian Manookian[1]. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments of paragraph thirty-one given the LAMH Trust beneficiaries are unknown.

33. Defendants deny any misrepresentation to BID or Brian Manookian. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments of paragraph thirty-three given the LAMH Trust beneficiaries are unknown.

34. Admitted.

35. Admitted.

36. Defendants admit the wood used for the top layer of the engineered product ordered, purchased and delivered to BID was Unfinished White Oak from the Eastern and Midwest Forests of the United States. The Unfinished White Oak was then manufacturer into the engineered planks in Guatemala and imported to Missouri by Teckton Corporation.

37. Defendants deny any misrepresentation to BID or Brian Manookian. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments of paragraph thirty-four given the LAMH Trust beneficiaries are unknown.

---

[1] Brian Manookian is presumed to be either a beneficiary of Plaintiff or an authorized representative given he was the singular point of contact and complainer-in-chief following BDI's purchase of the Unfinished White Oak.

38. Denied.

39. Defendants admit, generally, that white oak flooring is presently more expensive than red oak flooring for several reasons. Defendants also admit, generally, that the aesthetics of white oak are generally preferred over red oak today and, therefore, have stronger demand. Defendants admit white oak is more dense than red oak. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph thirty-nine.

40. Defendants admit, generally, that the color of oak flooring is important to customers. The statement quoted in paragraph forty relates to pre-finished wood flooring, not the Unfinished White Oak purchased by BID.

41. Denied. The Unfinished White Oak was delivered to BID.

42. Denied.

43. Defendants admit Brian Manookian voiced his displeasure over the color of the Unfinished White Oak only after a finish was applied by individuals presumably hired by Plaintiff to stain and seal the wood after the flooring was installed. Defendants deny the remaining averments in paragraph forty-three.

44. Defendants admit Brian Manookian voiced his displeasure over the color of the Unfinished White Oak after it was installed and a stain applied. Defendants are without knowledge or information sufficient to form a belief as to what "investigation" was performed by beneficiaries of the LAMH Trust.

45. Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph forty-five.

46. Denied.

47. Defendants admit Brian Manookian contacted Stan Dennison with Teckton in October of 2023 after a stain was applied to the Unfinished White Oak. Defendants deny the remaining averments in paragraph forty-seven.

48. Defendants deny there are only two ways to determine whether the Unfinished White Oak is white versus red oak.

49. Admitted.

50. Denied.

51. Defendants admit a test kit is a cost-effective way to determine whether the product purchased is white oak. The most reliable test, although not cost efficient, would be a DNA test, which Brian Manookian refused to do.

52. Defendants admit it arranged to have Jared Fitzgerald, a regional instructor with the National Wood Flooring Association, visit the property to conduct a chemical test. Defendants deny the remaining averments in paragraph fifty-two.

53. Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph fifty-three.

54. Defendants are without knowledge or information as to whether Brian Manookian is a beneficiary of the LAMH Trust. Defendants admit Brian Manookian made several threatening, derogatory emails and phone calls to Defendants making the same or similar specious allegations contained in Plaintiff's Amended Complaint. Defendants deny the remaining averments in paragraph fifty-four.

55. Defendants admit Brian Manookian made several threatening, derogatory emails and phone calls to Defendants making the same or similar specious allegations

contained in Plaintiff's Complaint. Defendants deny the remaining averments in paragraph fifty-five.

56. Denied.

57. Denied.

58 Denied.

59. Denied.

60. Defendants deny any misrepresentation concerning the Unfinished White Oak. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph sixty.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. Defendants incorporate its prior responses as if fully set forth herein.

74. Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph seventy-four.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied

80. Denied.

81. Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph eighty-one.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. Defendants incorporate its prior responses as if fully set forth herein.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Defendants incorporate its prior responses as if fully set forth herein.

97. Denied.

98. Denied.

99. Denied.

100. Denied.

101. Denied.

102. Denied.

103. Denied.

104. Denied.

105. Denied.

106. Defendants incorporate its prior responses as if fully set forth herein.

107. Defendants deny any violation of the TCPA.

108. Defendants deny any violation of the TCPA.

109. Denied.

110. Denied.

111. Denied.

112. Denied.

113. Denied.

114. Denied.

115. Denied.

116. Defendants incorporate its prior responses as if fully set forth herein.

117. Denied.

118. Denied.

119. Denied.

120. Denied.

121. Defendants incorporate its prior responses as if fully set forth herein.

122. Defendants deny any violation of the TCPA.

123. Defendants deny any violation of the TCPA.

124. Denied.

125. Denied.

126. Denied.

127. Denied.

128. Denied.

129. Defendants incorporate its prior responses as if fully set forth herein.

130. Denied.

131. Denied.

132. Denied.

133. Denied.

134. Denied.

135. Denied.

136. Denied.

137. Defendants deny Plaintiff is entitled to any class certification.

138. Defendants deny each and every averment of the Complaint not already specifically admitted or denied herein.

## AFFIRMATIVE DEFENSES

1. Plaintiff's purported class fails because Plaintiff's claims are not typical of the claims of the remainer of the class as required by Rule 23 of the Federal Rules of Civil Procedure, and Plaintiff has not affirmatively demonstrated compliance with Rule 23.

2. Plaintiff's purported class fails because Plaintiff does not fairly and adequately represent the class having suffered no injuries similar to any other alleged members of the proposed class. Plaintiff is atypical of the proposed class in that it has not suffered the injury complained of and cannot adequately represent the interest of those allegedly injured as required by Rule 23 of the Federal Rules of Civil Procedure. Plaintiff has failed to demonstrate compliance with Rule 23.

3. Plaintiff's request for class certification should be dismissed given the requirements of Rule 23 of the Federal Rules of Civil Procedure have not been affirmatively met and the Court should refuse to continue to certify this action until such time as Rule 23 requirements have been met to the satisfaction of the Court.

4. Plaintiff, by and through its authorized agent and presumed beneficiary, Brian Manookian, spoiled material evidence making it impossible for Defendants to test and confirm the quality of the hardwood flooring purchased by BID. Brian Manookian's actions were intentional and designed for the purpose of preventing Defendants from testing the Unfinished White Oak. Given Brian Manookian was acting with Plaintiff's authority, the Court should dismiss this action, with prejudice.

5. Plaintiff failed to mitigate its damages, if any.

6. Defendants assert the comparative fault of Brian Manookian as the authorized agent and purported beneficiary of Plaintiff. Brian Manookian failed to inspect

the Unfinished White Oak after it was purchased to ensure it met his exacting standards. He then allowed the Unfinished White Oak to be installed without comment as to color or quality. Without doing his due diligence, Brian Manookian then selected a stain that changed the character of the wood. When he was not happy with the finished product, he set out on an intentional campaign to insult, threaten and bully Defendants. Brain Manookian made Defendants aware of the tactics he had employed against others who crossed him.[2] At the same time, Brian Manookian refused to allow Defendants to test the Unfinished White Oak at a credible lab and refused to allow a professional engineer to collect samples of the stained Unfinished White Oak. His actions were intentional and unreasonable under any circumstance. His negligent and intentional misconduct is the true and proximate cause of any injury sustained by Plaintiff.

7. Defendants assert the comparative fault of Bureau Interior Design, 829 Gale Lane, Nashville TN 37204, and the "professional installers" and finishers who worked for Plaintiff to install and stain the Unfinished White Oak. BID ordered, purchased and received exactly what Plaintiffs wanted, i.e. the Unfinished White Oak. Given Defendants have not been allowed to test the Unfinished White Oak, and out of abundance of caution, Defendants assert the comparative fault of BID, its agents, and the "professional installers" for failing to identify whether the Unfinished White Oak was, in fact, red oak before, during and after installation. This would have been obvious to any competent design or installation professional. Moreover, any wood flooring installer would know that

---

[2] Brian Manookian was permanently disbarred from the practice of law in Tennessee due to his "…long pattern of intimidating and degrading conduct…" in order to succeed in litigation. Brian Manookian v. Bd. of Pro. Res. the Sup. Court, 685 S.W.3d 744, 809 (Tenn. 2024); see also Diamond Consortium, Inc. v. Brian Manookian, 2017 U.S. Dist. LEXIS 122625, at *26 (E.D. Tex. Aug. 3, 2017) (finding Brian Manookian's conduct constituted fraud, bad faith and abuse of the judicial process).

once flooring is installed, it is deemed accepted by the installer and the owner. BID and the alleged "professional installers" and finishers who worked for Plaintiff were the sole and proximate cause of any injury sustained by Plaintiff.

8. In accordance with Rule 8 of the Federal Rules of Civil Procedure, and out of an abundance of caution and avoidance, waving any potential affirmative defenses, defendants hereby plead the defense of accord and satisfaction, laches, payment, release, waiver, and statute of limitations.

WHEREFORE, premise considered, defendants respectfully request this matter be dismissed, with prejudice, with all costs taxed to plaintiff, that a jury of twelve (12) try this action, and for such other general or specific relief as deemed appropriate by the Court under the facts and circumstances of this case.

Respectfully submitted,

*s/ Steven J. Meisner*
**STEVEN J. MEISNER**
Registration No. 23777
**ANGELICA M. SANTIAGO**
Registration No. 39386
Attorneys for Defendants

**BREWER, KRAUSE, BROOKS, CHASTAIN & MEISNER, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228
E-mail: smeisner@bkblaw.com
Direct: (615) 630-7727
E-mail: asantiago@bkblaw.com
Direct: (615) 630-7715

# CERTIFICATE OF SERVICE

  I hereby certify that a true and exact copy of the foregoing document has been served by the methods indicated upon the following on this 10th day of December, 2024:

| | |
|---|---|
| ☐ Hand<br>☐ Regular Mail<br>☐ Certified Mail<br>☐ Fax<br>☐ Fed X<br>☐ Email<br>☒ EFS | Mark Hammervold, Esquire (BPR #31147)<br>Hammervold Law<br>155 S. Lawndale Avenue<br>Elmhurst, IL 60126<br>E-Mail: mark@hammervoldlaw.com<br>Phone: (405) 509-0372<br>*Attorney for Plaintiff* |

             *s/ Steven J. Meisner*
             **STEVEN J. MEISNER**

SJM:rkp

241209 - RW Supply Manookian Am Ans
1709.235.13

15

Case 3:24-cv-00704   Document 22   Filed 12/10/24   Page 15 of 15 PageID #: 125